UNITED STATES DISTRICT COURT FOR THE DISCTRICT OF COLUMBIA

MAHMONIR RAHIMI
13412 Cedar Creek Ln
Silver Spring, MD 20904

     *Plaintiff,*

  *vs.*

JOHN LANSING
CEO AND DIRECTOR OF THE
BROADCASTING BOARD OF
GOVERNORS
330 Independence Ave, SW
Washington DC 20237

     *Respondent.*

Civil Action No. _____

## COMPLAINT

### Nature of the Action

1. The Broadcasting Board of Governors ("BBG") is a United States federal agency, responsible for informing, engaging, and connecting people around the world in support of freedom and democracy.

2. Plaintiff Mahmonir Rahimi worked for BBG's Persian language service, Persian News Network ("PNN"), also known as VOA Persian, from March 2008 until May 26, 2015.

3. In 2010, Plaintiff served as a character witness in an EEO proceeding against another VOA Persian employee.

4. Due to Plaintiff's participation in the EEO proceedings, she was denied a pay increase, better job opportunities, federal employee positions, and was ultimately terminated.

5.  Defendant retaliated against Plaintiff because of her participation in a protected activity and caused her to suffer financial, professional and emotional harm.

## Jurisdiction & Venue

6.  This Court has jurisdiction pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 et seq., 28 U.S.C. §§ 1331, 1337, 1343, and 1346.
7.  Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1402.
8.  Plaintiff has exhausted her administrative remedies and is filing this suit due to the lack of issuance of a Final Agency Decision on her complaint, after 180 days from its filing, and pursuant to the Right to Sue Letter issued on March 23, 2016.

## Parties

9.  Plaintiff, Mahmonir Rahimi, is a Citizen of the United States, who was born in Iran. She was a *de facto* employee of BBG's VOA Persian from March 2008 until May 26, 2015. Plaintiff was continuously employed under a series of purchase order contracts. Plaintiff is an adult resident of Silver Spring, Maryland.
10. Defendant, BBG, is a federal agency charged with overseeing all US government and government-sponsored, non-military, international broadcasting.

## Statement of Facts

11. Plaintiff began working at VOA Persian in Washington, DC in March 2008 and continued to do so until May 26, 2015.
12. Plaintiff's employment contract designated her as a Purchase Order Vendor, also commonly known as an independent contractor. Plaintiff's contract also demarcated her as a non-personal service provider. Despite these classifications, Plaintiff was a *de facto* employee of BBG and had an employer-employee relationship with the agency.
13. Under EEOC case law precedents Plaintiff was considered an employee and was entitled to participate in the EEO complaint process resulting in this suit.

14. In addition, according to the Federal Rules of Acquisition ("FAR") Plaintiff should have been classified and treated as an employee of BBG because she was providing *personal services* to the agency as defined by the FAR, and because BBG had exceeded its Congressional authorization to acquire *non-personal* service providers at all times during Plaintiff's employment at the agency.

15. From 2008 until 2010, while an employee of VOA Persian, Plaintiff served as the host for *Zane Emrooz* (Today's Woman), a TV show focused on gender issues. During this time she also served as an interviewer, writer and translator. She often conducted live interviews and hosted on-air programs.

16. In 2010, Plaintiff was asked to serve as a witness in an EEO proceeding against another VOA Persian colleague, Mr. Mehdi Falahati.

17. Prior to working at VOA Persian in Washington, DC, Plaintiff had worked with Mr. Falahati at Radio Free Europe/Radio Liberty in Prague, Czech Republic. Therefore, she was asked to testify regarding Mr. Falahati's character.

18. Soon after, Plaintiff started facing retaliation because of her participation in the EEO proceeding.

19. After her testimony, in 2010, Ms. Amy Katz, an Executive Producer at VOA Persian, and Mr. Ali Sajadi, Plaintiff's supervisor at the time, asked Plaintiff to meet them in Ms. Katz's room. Plaintiff was told that she could not work for both TV and Radio programs of VOA Persian.

20. At that time, as an independent contractor most of Plaintiff's assignments were for VOA Persian's TV programs. However, she also produced packages for the Radio programming.  Roughly two-thirds (2/3) of her income was from her TV work and one-half (1/3) was from Radio. Therefore, Plaintiff lost roughly one-third (1/3) of her income.

21. At the same time, Ms. Katz and Mr. Sajadi told Plaintiff that she could no longer work the same shift as Mr. Falahati. This was because Mr. Falahati had told the VOA Persian management that he was not comfortable working the same shift as Plaintiff.

22. Based upon this order, Plaintiff could no longer work during the morning shift and was only permitted to work during the night shift.

23. Consequently, Plaintiff, whom up until that point had been the host for *Zane Emrooz*, was assigned to a TV show called the Morning Edition. This program was aired in the morning in Iran, and was produced in the evenings in Washington, DC.

24. Shortly after Plaintiff joined the Morning Edition, the show was suspended. Based on information and belief the VOA Persian management knew that Morning Edition was going to be suspended when they assigned Plaintiff to the show.

25. On October 14, 2010, Plaintiff was issued an offer letter informing her about the indefinite suspension of Morning Edition. The letter also stated that " . . . there are no longer any television contractor assignments available *at night*." (Emphasis added). The letter stated, "[VOA Persian] is willing to offer you *radio* contractor assignments on a *similar shift*, you have been working, and at the existing rate in the subject contract." (Emphasis added).

26. This letter documented the fact that Plaintiff was officially prohibited from working during the day shift and from undertaking TV assignments. This is due to the fact that almost all of the VOA Persian TV shows were produced during the morning shift.

27. After Morning Edition's suspension, the only night programing left was for VOA Persian's radio show, *Radio Tamasha*.

28. At that time, Plaintiff's employment contract as a Producer/Writer/Researcher/Reporter permitted her to work for any and all VOA Persian divisions and programs. When Morning Edition was suspended, there were other shows and positions that Plaintiff could have been assigned to. However, the VOA Persian management, in retaliation for Plaintiff's EEO activity, refused to assign her to any shows that were produced in the morning. Therefore, Plaintiff could only work for *Radio Tamasha*.

29. Plaintiff was pressured to sign the October 14, 2010 offer letter consenting to only working for the radio. If she agreed, her contract would have been modified limiting her only to working for the radio. However, Plaintiff refused. She told her supervisors that she was being limited to the night shift because of her EEO activity and none of her supervisors denied this fact.

30. Plaintiff negotiated a new contract that at least on its face allowed her to work for both TV and Radio programs of VOA Persian.

31. Nevertheless, from then on Plaintiff was only permitted to work for VOA Persian's radio programming.

32. When Plaintiff was assigned to work only for the Radio, there had been various discussions about shutting down the radio programing. This was one of the reasons why Plaintiff refused to sign the October 14, 2010 offer letter. She knew that she was being limited to a program that was destined to fail, and it eventually happened when she was terminated in May 2015.

33. From 2010 until 2015, Plaintiff was twice denied TV hosting positions due to her EEO activity. In 2012, she submitted a proposal to start a new TV program titled, " Law in the US." Her proposal was approved and the production team was preparing for its execution. However, the program was soon dropped and Plaintiff was explicitly told that it was because she could not be moved to the morning shift due to her "situation" with Mr. Falahati.

34. Again, in 2014, Plaintiff was recommended to become the host for one of the two new programs that VOA Persian was launching: 1) *Jame-e Madani* and 2) *Eghtesad*. She was initially allowed to choose between the two programs. Plaintiff believed that *Jame-e Madani* was more aligned with her expertise and experiences. However, she was then told that she should host *Eghtesad* and a topic expert would assist her in the process. (It should be noted that Mr. Falahati was assigned as the host for *Jame-e Madani*). Regardless, Plaintiff agreed to host *Eghtesad* and began her cooperation with the production team. One day during a preparation meeting, Ms. Michelle Stewart from the Labor and Employee Relations Division, approached Mr. Manzarpour, the then and current Executive Director of VOA Persian, to speak with him in private. According to Mr. Manzarpour's own testimony, she informed him that due to a settlement between Mr. Falahati and the BBG, Mr. Falahati and Plaintiff could not work the same shift. After the meeting, Plaintiff was told that she could not be the host because she was not allowed to work during the same shift as Mr. Falahati. Both *Jame-e Madani* and *Eghtesad* were recorded in the mornings. Therefore, Plaintiff was

once more denied a professional opportunity and greater pay because of her participation in Mr. Falahati's EEO proceeding.

35. During this time, Plaintiff was aware of the fact that she was being retaliated against for her EEO activity. She attempted to negotiate the limitations on her work schedule with her supervisors including Mr. Behrouz Nikzat, Mr. Kaveh Basmanji, and Mr. Mohammad Manzarpour. However, these efforts were futile, and none of her supervisors took any actions to remedy or to stop the retaliation that Plaintiff faced.

36. Plaintiff also spoke to Ms. Tisha Elliot, a Labor Specialist of the Labor and Employee Relations Division. She recounted the retaliation that she was facing. However, Ms. Elliot told her that she did not have any recourse because she was an independent contractor, and the EEO process was only available to federal employees. As a result, Plaintiff did not file any EEO complaints until the time of her termination.

37. In 2014, Plaintiff, through counsel, specifically addressed the issue with Mr. Jim Kennedy, the Staff Director at VOA Persian. Mr. Kennedy told Plaintiff's counsel that, "there is nothing to resolve right now because she has not been harmed." Therefore, the agency once again denied Plaintiff's grievances and failed to stop or remedy its retaliatory actions.

38. Furthermore, because of the retaliation she faced, Plaintiff was subject to various administrative red tapes and limitations. She was frequently prohibited from attending important work meetings. She was officially required to attend the meetings but then was verbally told that she could not appear at the office before 4PM, which was the end time for the morning shift.

39. In one instance, in April 2013, Mr. Behrouz Nikzat, Plaintiff's supervisor, asked her to attend a meeting with Mr. David Ensor, the then Director of VOA, to discuss VOA Persian's radio programming. The meeting was to take place at 4pm. Plaintiff arrived at the office before 4PM in order to not be late for the meeting. Mr. Kennedy, the VOA Persian Staff Director, admonished Plaintiff for violating the "rule" that she could not be at the office at the same time as Mr. Falahati. Plaintiff was repeatedly exposed to similar reprimands.

40. Throughout this entire time, Mr. Falahati's alleged discomfort did not prevent him from staying later than his required work hours, well into the time when Plaintiff started her shift. In addition, Mr. Falahati often passed by Plaintiff's workspace and socialized with other co-workers in the proximity of her desk. Mr. Falahati's behavior raises the question as to whether retaliating against Plaintiff and aggressively limiting her working hours, for approximately 5 years, remedied his grievance of not wanting to work the same shift as Plaintiff.

41. Despite the retaliation that Plaintiff faced, she repeatedly applied for federal employee positions so that she could rectify the financial and professional harm that she was suffering. Between 2010 and 2015, Plaintiff applied to various openings including Vacancy ID: 1422675 (Announcement Number: DE-15-164), Vacancy ID: 1253672 (Announcement Number: DE-15-06), Vacancy ID: BB1054971 (Announcement Number: DE-14-45), Vacancy ID: BB911676 (Announcement Number: DE-13-147), Vacancy ID: 1007734 (Announcement Number: DE-14-19), Vacancy ID: 435894 (Announcement Number: DEU-11-41).

42. All of the federal employee positions that Plaintiff applied to required her to work during the morning shift. Therefore, despite her qualifications, Plaintiff was not selected for any of these positions.

43. In May 2015, Plaintiff was notified that the nightly Radio program was being terminated, and due to budgetary restrictions, her contract was being cut short. Plaintiff was explicitly reminded that her termination had nothing to do with her work quality but rather with the fact that her program could no longer be funded.

44. A department wide email written by Ms. Setareh Sieg, Director of VOA Persian, on May 14, 2015, stated that Plaintiff's departure, " had nothing to do with [her] work product," and she had "served VOA Persian with distinction."

45. Similarly, in July 2015, Mr. Mohammad Manzarpour, Executive Editor of VOA Persian, wrote Plaintiff a recommendation letter attesting to her superior work quality and professionalism. Consequently, Plaintiff's work quality was not a reason to stop retaining her professional services.

46. Plaintiff's last day of work was on May 26, 2015.

47. At VOA Persian, the general practice is that if a show is suspended the staff for the show are reassigned to other programs and divisions. However, given the retaliatory prohibition against Plaintiff working during the morning shift she was not reassigned to any existing openings or programs.

48. After Plaintiff was terminated, she applied for the following contractor and federal employee positions: BBG39-Q-15-PERSIAN-041, BBG39-Q-15-PERSIAN-039, BBG39-Q-15-PERSIAN-042, and Vacancy ID: 1422675 (Announcement Number: DE-15-164).

49. Despite her qualifications Plaintiff was not selected for any of these position either.

50. In his affidavit to the EEO investigator Mr. Manzarpour, explicitly stated that he seriously considered Plaintiff for one of the open contract positions, but did not select her because of the limitation on her work hours due to her prior EEO activity.

51. Mr. Manzarpour also told the EEO investigator that the fact that Plaintiff could not work the same shift as Mr. Falahati was one the factors that "made it impossible to retain her or place her in another position."

52. The EEO investigator's report also reveals that Ms. Sieg was also aware of the fact that the retaliation Plaintiff was facing was due to her prior EEO activity.

53. Plaintiff faced a continuing retaliation and violation of her rights from 2010 until 2015.

54. Finding her termination and non-selection to be retaliatory, on July 9, 2015 Plaintiff contacted BBG's Office of Civil Rights and filed an informal complaint.

55. Pursuant to her complaint, an EEO Counselor attempted to resolve this matter. However, she was unable to do so, and therefore, a final interview was conducted with Plaintiff on September 10, 2015. Plaintiff was issued a Notice of Right to File a Discrimination Complaint on the same day.

56. On September 25, 2015, Plaintiff filed a formal discrimination complaint. The agency accepted it on February 5, 2016.

57. Subsequently, an investigation was initiated. However, there was no Final Agency Decision within the statutorily allotted 180-days time frame. 29 CFR §1614.310.

58. Consequently, on March 23, 2015, Plaintiff, through counsel requested a Right to Sue Letter.

59. On the same day, Plaintiff was issued a Right to Sue Letter notifying her of her right to file a civil claim. Plaintiff exhausted her administrative remedies before filing this suit.

## COUNT I- Misclassification
**[48 C.F.R. § 2.101; 48 C.F.R. § 37.104; Pub. L. 107-228, Div. A, Title V, § 504, Sept. 30, 2002, 116 Stat. 1393]**

60. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

61. At all relevant times, Plaintiff was providing personal services to Defendant in the manner of federal employees under contracts, whether express or implied.

62. Plaintiff was deliberately mislabeled and misclassified as a non-personal service provider by Defendant.

63. Plaintiff was deprived of legal rights, and financial and professional benefits due to this deliberate misclassification.

64. The harm Plaintiff suffered was the direct result of Defendant's actions.

## COUNT II- Retaliation
**[Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]**

65. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

66. Defendant retaliated against Plaintiff in violation of Title VII by switching her to the night shift and by permanently prohibiting her from working during the morning shift due to her participation in an EEO proceeding.

67. Defendant knew about the retaliatory actions against Plaintiff.

68. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

69. Defendant's actions were in conscious disregard of Plaintiff's rights.

70. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT III- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

1. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

2. Defendant retaliated against Plaintiff in violation of Title VII denying her TV hosting positions in 2012 and 2014 due to her participation in an EEO proceeding.

3. Defendant knew about the retaliatory actions against Plaintiff.

4. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

5. Defendant's actions were in conscious disregard of Plaintiff's rights.

6. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT IV- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

7. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

8. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: 435894 (Announcement Number: DEU-11-41) due to her participation in an EEO proceeding.

9. Defendant knew about the retaliatory actions against Plaintiff.

10. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

11. Defendant's actions were in conscious disregard of Plaintiff's rights.

12. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT V- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

13. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

14. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: 1007734 (Announcement Number: DE-14-19), due to her participation in an EEO proceeding.

15. Defendant knew about the retaliatory actions against Plaintiff.

16. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

17. Defendant's actions were in conscious disregard of Plaintiff's rights.

18. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT VI- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

19. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

20. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: BB911676 (Announcement Number: DE-13-147), due to her participation in an EEO proceeding.

21. Defendant knew about the retaliatory actions against Plaintiff.

22. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

23. Defendant's actions were in conscious disregard of Plaintiff's rights.

24. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT VII- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

25. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

26. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: BB1054971 (Announcement Number: DE-14-45), due to her participation in an EEO proceeding.

27. Defendant knew about the retaliatory actions against Plaintiff.

28. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

29. Defendant's actions were in conscious disregard of Plaintiff's rights.

30. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT VIII- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

31. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

32. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: 1253672 (Announcement Number: DE-15-06), due to her participation in an EEO proceeding.

33. Defendant knew about the retaliatory actions against Plaintiff.

34. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

35. Defendant's actions were in conscious disregard of Plaintiff's rights.

36. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.


**COUNT IX- Retaliation**
**[Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]**

37. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

38. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for Vacancy ID: 1422675 (Announcement Number: DE-15-164), due to her participation in an EEO proceeding.

39. Defendant knew about the retaliatory actions against Plaintiff.

40. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

41. Defendant's actions were in conscious disregard of Plaintiff's rights.

42. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.


**COUNT X- Retaliation**
**[Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]**

43. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

44. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for BBG39-Q-15-PERSIAN-041 due to her participation in an EEO proceeding.

45. Defendant knew about the retaliatory actions against Plaintiff.

46. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

47. Defendant's actions were in conscious disregard of Plaintiff's rights.

48. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT XI- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

49. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

50. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for BBG39-Q-15-PERSIAN-039, due to her participation in an EEO proceeding.

51. Defendant knew about the retaliatory actions against Plaintiff.

52. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

53. Defendant's actions were in conscious disregard of Plaintiff's rights.

54. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

## COUNT XII- Retaliation
### [Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3]

55. Plaintiff hereby incorporates by reference all prior paragraphs as if set forth in their entirety here.

56. Defendant retaliated against Plaintiff, in violation of Title VII, by failing to hire her for BBG39-Q-15-PERSIAN-042 due to her participation in an EEO proceeding.

57. Defendant knew about the retaliatory actions against Plaintiff.

58. Defendant failed to take reasonable action to correct the retaliatory action against Plaintiff.

59. Defendant's actions were in conscious disregard of Plaintiff's rights.

60. As a proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain direct and consequential damages, including but not limited to loss of past and future earnings, emotional pain and suffering, mental anguish, damage to her professional development, and loss of employment opportunities.

WHEREFORE, Plaintiff requests that this Court declare that:

(a) Plaintiff was a *de facto* employee of Defendant;

(b)  Defendant has violated Plaintiffs' rights under Title VII, Civil Rights Act of 1964, as amended, 42 USC § 2000E-3;

(c) Award Plaintiff consequential and compensatory damages in an amount to be proven at trial;

(d)  Award plaintiff's' costs and reasonable attorney fees incurred in this action; and

(e) Award such other relief, as the Court deems appropriate.

Respectfully submitted,

__/s/ Ali Herischi_____

Ali Herischi, Esq. (MD0024)
Herischi & Associates LLC
7201 Wisconsin Ave., Suite 450
Bethesda, Maryland 20814
Phone: 301-363-4540
Fax: 301-363-4538
*Attorney for Plaintiffs*