# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| MAHMONIR RAHIMI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1173 (RBW) |
| | ) | |
| KENNETH WEINSTEIN,[1] Chairman, | ) | |
| Broadcasting Board of Governors, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM OPINION

Mahmonir Rahimi, the plaintiff in this civil case, filed a complaint against the defendant, Kenneth Weinstein, in his official capacity as the Acting Chairman of the Broadcasting Board of Governors ("the agency"), alleging that the agency retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to 2000e-17 (2012) ("Title VII"). See generally Plaintiff's First Amended Complaint ("Am. Compl."). Currently before the Court is the Defendant's Partial Motion to Dismiss the First Amended Complaint or, Alternatively, for Partial Summary Judgment ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[2] the Court concludes that it must grant in part and deny in part the agency's motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kenneth Weinstein has been automatically substituted as the defendant in this matter.

[2] In addition to the filings already identified, the Court also considered the following submissions in reaching its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Partial Motion to Dismiss the First Amended Complaint or, Alternatively, for Partial Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s Facts"); (3) the Plaintiff[']s[] Memorandum of Points and Authorities in Opposition to Defendant's Partial Motion to Dismiss the First Am[]ended Complaint or, Alternatively, for Partial Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Response to

(continued . . . )

# I.    BACKGROUND

The plaintiff worked for the Persian News Network, also known as VOA Persian, the Persian language service of the Broadcasting Board of Governors, from March 2008 until May 26, 2015.  Am. Compl. ¶¶ 1–2.  She "was continuously employed under a series of purchase order contracts," id. ¶ 9, which "designated her as a Purchase Order Vendor," id. ¶ 12.  The plaintiff served as a TV show host, "interviewer, writer and translator" from 2008 until 2010.  Id. ¶ 15.

"In 2010, [the p]laintiff was asked to serve as a witness in an [Equal Opportunity Employment ("EEO")] proceeding against another VOA Persian colleague, Mr. Mehdi Falahati."  Id. ¶ 26.  According to the plaintiff, "[s]oon [there]after, [she] started facing retaliation because of her participation in the EEO proceeding."  Id. ¶ 28.  In 2010, the plaintiff's supervisor allegedly told her "that she could not work for both TV and Radio programs of VOA Persian," id. ¶ 29, which caused the plaintiff to "los[e] roughly one-third [ ] of her income," id. ¶ 30.  The plaintiff's supervisor also purportedly told her "that she could no longer work the same shift as Mr. Falahati . . . because Mr. Falahati had told the VOA Persian management that he was not comfortable working the same shift as [the p]laintiff."  Id. ¶ 31.  "Based upon this order, [the p]laintiff could no longer work during the morning shift and was only permitted to work during the night shift."  Id.  The plaintiff was therefore reassigned to a TV show produced during the evenings, id. ¶ 33, but "[s]hortly after [she] joined [that TV show], the show was suspended," id. ¶ 34, and "the only night programing left was for VOA Persian's radio show," id. ¶ 37.

( . . . continued)
Defendant's Statement of Material Facts and Plaintiff's Statement of Material Facts with a Genuine Issue for Litigation ("Pl.'s Facts"); (5) the Defendant's Reply in Support of Partial Motion to Dismiss the First Amended Complaint or, Alternatively, for Partial Summary Judgment ("Pl.'s Reply"); and (6) the Defendant's Response to Plaintiff's Statement of Genuine Issues ("Def.'s Facts Resp.").

According to the plaintiff, "[f]rom 2010 until 2015, [she] was twice denied TV hosting positions due to her EEO activity." Id. ¶ 43; see also id. ¶ 44 ("[The p]laintiff was told that she could not be the host because she was not allowed to work during the same shift as Mr. Falahati[, and b]oth [TV shows] were recorded in the mornings."). The plaintiff was also allegedly prohibited from attending work meetings that occurred during the morning shift, even though those meetings were mandatory. See id. ¶¶ 48–49.

"Despite the retaliation that [the p]laintiff faced, she repeatedly applied for federal employee positions [with VOA Persian] so that she could rectify the financial and professional harm that she was suffering." Id. ¶ 51; see also id. (listing six specific federal positions for which the plaintiff applied between 2010 and 2015). However, according to the plaintiff, she was not selected for any of these positions because they all required the person selected to work during the morning shift. See id. ¶ 52.

During this same time, the plaintiff contends that she "attempted to negotiate the limitations on her work schedule with her supervisors . . . . However, these efforts were futile, and none of her supervisors took any actions to remedy or to stop the retaliation." Id. ¶ 45. "[The p]laintiff also spoke to Ms. Tisha Elliot, a Labor Specialist of the Labor and Employee Relations Division . . . [about] the retaliation that she was facing . . . [, but] Ms. Elliot told her that she did not have any recourse because she was an independent contractor, and the EEO process was only available to federal employees." Id. ¶ 46. "This idea was further reinforced for the [p]laintiff when a member of the federal employees' labor union, Ms. Parichehr Farzam, informed the [p]laintiff that she could not participate in the EEO complaint process." Pl.'s Opp'n at 5. In 2014, the plaintiff, "through counsel," contacted the Staff Director at VOA Persian regarding the alleged retaliation, but was told that "there is nothing to resolve right now

because she has not been harmed." Am. Compl. ¶ 47. "As a result, [the p]laintiff did not file any EEO complaints until the time of her termination." Id. ¶ 46.

"In May 2015, [the p]laintiff was notified that the nightly Radio program was being terminated, and due to budgetary restrictions, her contract was being cut short." Id. ¶ 53. In the department-wide e-mail sent by the Director of VOA Persian announcing the plaintiff's departure, the Director stated that the plaintiff's separation "had nothing to do with her work product," and that the plaintiff had "served VOA Persian with distinction." Id. ¶ 54. "[The p]laintiff's last day of work was on May 26, 2015." Id. ¶ 56. According to the plaintiff, when a VOA Persian show is suspended, the "general practice" is that the show's staff "are reassigned to other programs and divisions. However, given the retaliatory prohibition against [the p]laintiff working during the morning shift[,] she was not reassigned to any existing openings or programs." Id. ¶ 57.

Following her termination, the plaintiff applied for an additional federal employee position and three contractor positions with VOA Persian, see id. ¶ 58, but she "was not selected for any of these position[s]," id. ¶ 59. Mohammad Manzarpour, the Executive Editor of VOA Persian, id. ¶ 55, stated in an affidavit "that he seriously considered [the p]laintiff for one of the open contract positions, but did not select her because of the limitation on her work hours," id. ¶ 60, and "the fact that [the p]laintiff could not work the same shift as Mr. Falahati was one [of] the factors that 'made it impossible to retain her or place her in another position,'" id. ¶ 61.

On July 9, 2015, the plaintiff filed an informal complaint with the agency's Office of Civil Rights. Id. ¶ 64. After an EEO counselor was unable to informally resolve the matter, the plaintiff filed a formal discrimination complaint with the agency on September 25, 2015. Id.

¶¶ 65–66.  After the agency failed to issue a Final Agency Decision within 180 days, the plaintiff

requested and was issued a Right to Sue Letter on March 23, 2015.  See id. ¶¶ 67–69.

The plaintiff filed suit in this Court on June 17, 2016, see Complaint at 1, and amended

her complaint on November 2, 2016, see Am. Compl. at 1.  In her Amended Complaint, the

plaintiff asserts eleven counts of retaliation in violation of Title VII, see id. at 11–16, and one

count of misclassification "as a non-personal service provider," id. ¶ 72.  The agency filed its

partial motion to dismiss, or alternatively for partial summary judgment, on November 10, 2016,

see Def.'s Mot. at 1, and attached five exhibits that are not incorporated in the plaintiff's

Amended Complaint, see id., Exhibit ("Ex.") A (Declaration of Milsa Anglin ("Anglin Decl."));

id., Ex. B (Affidavit of Mahmonir Rahimi ("Rahimi Aff.")); id., Ex. C (Solicitation Number:

BBG39-Q-15-PERSIAN-039 (posted Apr. 24, 2015) ("Position No. 039")); id., Ex. D

(Solicitation Number: BBG39-Q-15-PERSIAN-040 (posted Apr. 24, 2015) ("Position No.

040")); id., Ex. E (Solicitation Number: BBG39-Q-15-PERSIAN-041 (posted May 7, 2015)

("Position No. 041")).  If "matters outside the pleadings are presented to and not excluded by the

court, [a] motion [to dismiss under Rule 12(b)(6)] must be treated as one for summary judgment

under Rule 56."  Fed. R. Civ. P. 12(d).  As both parties rely on or otherwise refer to these

exhibits in their briefing, see Def.'s Mem. at 5–6, 9–10; Pl.'s Opp'n at 5, 10; Def.'s Reply at 9,

10, the Court must treat the agency's motion as one for partial summary judgment, see Fed. R.

Civ. P. 12(d).

## II.      STANDARD OF REVIEW

If a district court considers a matter which requires that a Rule 12(b)(6) motion be

converted to one for summary judgment pursuant to Rule 56, the motion can be granted only "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a Rule 56 motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.    ANALYSIS

### A.    Exhaustion of Administrative Remedies

The agency asserts that five of the plaintiff's retaliation counts should be dismissed because she failed to exhaust her administrative remedies as to these claims. See Def.'s Mem. at 4. Specifically, the agency argues that the plaintiff's non-selections for five federal positions,[3] which are the subject of Counts IV through VIII of the Amended Complaint, all "occurred prior

---

[3] The parties do not contends that these positions were not positions for federal employment. See Def.'s Mem. at 3–4; Pl.'s Opp'n at 7.

to May 25, 2015, which was [forty-five] days before [the plaintiff] contacted a[n agency] EEO counselor." Id. (citing 29 C.F.R. § 1614.105(a) (2016)).

Title 29 of the Code of Federal Regulations sets forth the administrative process for filing discrimination complaints against the federal government. First, someone who believes she has been subjected to discrimination by her federal-government employer "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). And "[a]n aggrieved person must initiate contact with a Counselor within [forty-five] days of the date of the matter alleged to be discriminatory . . . ." Id. § 1614.105(a)(1). "At the initial counseling session, Counselors must advise individuals in writing of their rights and responsibilities, including . . . that only the claims raised in pre[-]complaint counseling . . . may be alleged in a subsequent complaint filed with the agency." Id. § 1614.105(b)(1). If the matter is not resolved by the pre-complaint counseling, "the aggrieved person shall be informed in writing by the Counselor . . . of the right to file a discrimination complaint." Id. § 1614.105(d). The complainant then has fifteen days to file a formal administrative complaint. Id. § 1614.106(b).

The District of Columbia Circuit has made clear that "Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'" Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations in original) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)). This exhaustion requirement is not a "mere technicality," but "serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (alteration in original) (internal quotation marks omitted).

The plaintiff does not dispute that she failed to initiate contact with an EEO counselor within forty-five days of her non-selection for the federal positions described in Counts IV through VIII of her Amended Complaint, but instead argues that the agency should be equitably estopped from raising this defense because Elliot, an agency employee in the Human Resources Department, informed the plaintiff "that she was not permitted to bring her case to an EEO counselor because she was . . . barred from engaging in the EEO process," and the plaintiff "reasonably" and "justifiably relied" on these representations. Pl.'s Opp'n at 10. The agency responds that the plaintiff "falls short of satisfying [the] burden" of proving that equitable estoppel applies in this case, see Def.'s Reply at 3, particularly given this Circuit's "clear presumption . . . against invoking the [equitable estoppel] doctrine against government actors in any but the most extreme circumstances," id. at 4 (alteration and omission in original) (quoting Int'l Union v. Clark, No. 02-cv-1484, 2006 WL 2598046, at *12 (D.D.C Sept. 11, 2006), aff'd sub nom. Barkley v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25 (D.C. Cir. 2014)).

The administrative exhaustion requirement in Title VII cases may be excused for equitable reasons, including equitable estoppel. See, e.g., Bowden, 106 F.3d at 437 ("[T]he administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit. Rather, functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver."); see also Cristwell v. Veneman, 224 F. Supp. 2d 54, 58 (D.D.C. 2002) (Walton, J.) ("In this Circuit it is clear that '[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense.'" (alteration in original) (quoting Bowden, 106 F.3d at 437)). The District of Columbia Circuit has explained that "equitable estoppel in the

statute of limitations context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998). In Currier, the Circuit stated "that an employer's affirmatively misleading statements that a grievance will be resolved in the employee's favor can establish an equitable estoppel . . . [because] an employee understandably would be reluctant to file a complaint with the EEOC for fear he would jeopardize his chances to gain relief voluntarily." Id. at 1368 (citations omitted).

The Circuit has recognized, however, "the Supreme Court's powerful cautions against application of the doctrine [of equitable estoppel] to the government as normally barring its use to undercut statutory exhaustion requirements," Rann v. Chao, 346 F.3d 192, 197 (D.C. Cir. 2003) (citation omitted) (first citing Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419–24 (1990); and then citing Deaf Smith Cty. Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1214 (D.C. Cir. 1998); see also ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988) ("[Estoppel's] application to the government must be rigid and sparing."). The Circuit has therefore noted that

> [t]he case for [equitable] estoppel against the government must be compelling, and will certainly include proof of each of the traditional elements of the doctrine— "false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party, and reliance, as well as a showing of an injustice and lack of undue damage to the public interest."

ATC Petroleum, 860 F.2d at 1111 (quoting Int'l Org. of Masters, Mates & Pilots v. Brown, 698 F.2d 536, 551 (D.C. Cir. 1983)).

Applying these principles, the Court must conclude that the agency is not equitably estopped from asserting the administrative exhaustion defense in this case. Elliot's statement that "the EEO process was only available to federal employees," Am. Compl. ¶ 46, does not, in

the Court's view, rise to a "compelling" case for equitable estoppel, see ATC Petroleum, 860 F.2d at 1111. First, the Court agrees with the agency, see Def.'s Reply at 7, that this statement regarding the non-availability of the EEO process to independent contractors is not technically a "false representation," ATC Petroleum, 860 F.2d at 1111, because, as will be discussed later, see infra Part III.B, Title VII applies only to federal employees, see Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C. Cir. 1979) (holding that "whether an individual is an employee or an independent contractor for purposes of [Title VII] involves . . . analysis of the 'economic realities' of the work relationship"). Second, even if the Court agreed with the plaintiff that this statement was false, the Supreme Court has held that "erroneous oral and written advice given by a Government employee" to a plaintiff cannot "give rise to estoppel against the Government," Richmond, 496 U.S. at 415–16, 421, and the Circuit has held that a plaintiff may not employ equitable estoppel "to avoid the exhaustion requirement on the ground that [government] officials erroneously advised [the plaintiff] of the futility of pursuing his administrative remedies," Glickman, 162 F.3d at 1214,[4] or "because an unnamed EEOC employee told [the plaintiff] that he could opt out of the administrative process at any time," Rann, 346 F.3d at 197. Accordingly, the agency's "provision of erroneous information, without more, cannot give rise to an equitable estoppel claim against [it]." Clark, 2006 WL 2598046, at *12.[5]

---

[4] Although Richmond, ATC Petroleum, and Glickman are not Title VII cases, the District of Columbia Circuit cited these cases in Rann, a Title VII case, as support for its skepticism about the application of equitable estoppel to claims involving the government. See Rann, 346 F.3d at 197 (first citing Richmond, 496 U.S. at 419–24; then citing Glickman, 162 F.3d at 1214; then citing ATC Petroleum, 860 F.2d at 1111).

[5] The plaintiff relies on Smith-Thompson v. District of Columbia, 657 F. Supp. 2d 123 (D.D.C. 2009), as support for her claim that equitable estoppel should apply in this case. See Pl.'s Opp'n at 8–11. In that case, another member of this Court stated that relying upon an "employer's direction to use its internal grievance procedures to adjudicate her discrimination claims . . . does not, standing alone, constitute affirmative misconduct justifying estoppel," Smith-Thompson, 657 F. Supp. 2d at 133 (citation omitted), but then concluded that the plaintiff demonstrated her diligence in pursuing her employment discrimination claim by contacting the District of Columbia Office of Human Rights "shortly after receiving the results of the Special Inspector's report" regarding the plaintiff's claim of sexual harassment, and that it was "unclear whether the plaintiff . . . was represented by counsel prior to the time she filed

(continued . . . )

Alternatively, the plaintiff contends that, "in light of the purpose of Title VII and the misinformation presented to [her], it would be unconscionable to expect her[,] as a layperson[,] to successfully negotiate the 'procedural labyrinth' presented by this case," Pl.'s Opp'n at 11 (quoting Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985)), and that the purpose of the exhaustion requirement—providing the agency with notice of her claims—is satisfied in this case because the plaintiff "made repeated attempts to report her situation and to resolve it with her supervisors and the [agency's] staff," id. at 11–12. The agency argues in response that the plaintiff's "vague allegation that she informed a supervisor that she felt limited in her work because of her EEO activity does not adequately establish that [the agency] had notice of the contours of her claims." Def.'s Reply at 7.

On the record before the Court, the Court concludes that the plaintiff has not satisfied her burden of proving, see Cristwell, 224 F. Supp. 2d at 58, that the agency was put on adequate notice of her allegations of retaliation found in Counts IV through VIII of the Amended Complaint. The cases cited by the plaintiff in support of her notice argument, see Pl.'s Opp'n at 11–12 (first citing Loe, 768 F.2d at 417; then citing Brown v. Marsh, 777 F.2d 8, 16 (D.C. Cir. 1985); and then citing Symko v. Potter, 505 F. Supp. 2d 129, 136 (D.D.C. 2007)), are all distinguishable from the factual circumstances here. In Loe, the Circuit concluded that the plaintiff complied with the applicable filing deadlines because she timely initiated contact with the EEO counselor upon discovering the agency's discriminatory acts, rather than when those acts occurred, see 768 F.2d at 417–19, and that "[n]otice overflow[ed] the record," given the

_____

( . . . continued)

her administrative complaint," id. at 133–34. Here, by contrast, the plaintiff was represented by counsel from at least 2014, prior to filing her administrative complaint in 2015, and, while she states that she tried to resolve her grievances informally, see Am. Compl. ¶¶ 45, 47, 64, she does not allege that she raised her nonselections for the federal employee positions at issue in Counts IV through VIII in those informal resolution attempts, see id., nor did she file her administrative complaint "shortly after" those attempts failed, see id. ¶ 64.

plaintiff's "outpouring of correspondence, charges, and appeals protest[ing] the nonperformance to the agency and EEO officials at virtually every turn," id. at 418. Here, by contrast, the plaintiff represents that she filed a single informal complaint with the Office of Civil Rights on July 9, 2015, see Am. Compl. ¶ 64, and a single formal discrimination complaint with the agency on September 25, 2015, id. ¶ 66. However, the plaintiff has not submitted to the Court copies of these complaints or any other filings associated with the agency's investigation of the complaints, see generally Am. Compl.; Pl.'s Opp'n, and therefore, the Court cannot conclude that the plaintiff's administrative complaints sufficiently put the agency on notice that she was contesting her nonselection for the federal employee positions that form the basis of Counts IV through VIII, in addition to her termination on May 26, 2015, see Am. Compl. ¶¶ 53, 56.

In Brown, the Circuit concluded that the purpose of the administrative exhaustion requirement—to "giv[e] the agency notice of a claim and opportunity to handle it internally"—was "amply satisfied" because the plaintiff filed an administrative complaint with the Army in 1975 regarding his nonpromotion, and, although he did not thereafter "timely file separate complaints specifically spelling out his objections to particular nonselections at particular times for particular positions," "the Army knew the plaintiff had a pending complaint alleging a continuing pattern of discriminatory nonpromotion[, which] gave it sufficient notice." 777 F.2d at 15. Here, by contrast, the plaintiff filed her administrative complaints following her termination on May 26, 2015, see Am. Compl. ¶¶ 53, 56, 64, 66, which occurred after she was not selected for the federal positions from 2010 until 2015 that form the basis for Counts IV through VIII of the Amended Complaint, see id. ¶ 51; see also id. at 12–14. Therefore, because the plaintiff did not have a complaint pending with the agency at the time of her nonselections, as was the case in Brown, the agency could not have been on notice of these claims.

Finally, in <u>Symko</u>, another member of this Court concluded that the plaintiff had "acted diligently to preserve [her] claim" because she

> was diligent throughout in pursuing her rights. She did not simply file late and then ask her untimeliness to be excused. Rather, she sent a letter on the date her formal complaint was due specifically stating her intent to file a formal complaint and seeking a mere additional [ten] days to do so. She addressed the letter to her EEO Counselor at the same address she was given for filing her formal complaint. Neither her EEO Counselor nor anyone else representing the [agency] ever acknowledged receiving her letter nor formally responded to her request for additional time. [The plaintiff] proceeded to file her complaint within the additional [ten] days she had requested. Moreover, during that entire time she was proceeding <u>pro se</u>. "[C]ourts have excused parties, particularly those acting <u>pro se</u>, who make diligent but technically defective efforts to act within a limitations period." <u>Bowden</u>, 106 F.3d at 438. In light of the brevity of the time allotted—a mere [fifteen] days—the fact that those [fifteen] days fell during the holiday season, and her <u>pro se</u> status at the time, the Court finds nothing in [the plaintiff's] conduct that calls her diligence into question.
>
> Moreover, the [agency's] ability to investigate the merits of [the plaintiff's] claim was surely not prejudiced by her [ten]-day delay in filing her complaint.

505 F. Supp. 2d at 136–37 (sixth alteration in original). Here, by contrast, the plaintiff never filed an administrative complaint addressing her nonselections for the federal employee positions at issue, and therefore, the agency could not have investigated the merits of the claims. Moreover, the plaintiff was not <u>pro se</u>, but rather she was represented by counsel at some point in 2014, if not earlier. <u>See</u> Am. Compl. ¶ 47 (noting that "[i]n 2014, [the p]laintiff, <u>through counsel</u>, specifically addressed the issue [of retaliation] with . . . the Staff Director at VOA Persian" (emphasis added)).

Accordingly, for the reasons stated above, the Court concludes that the plaintiff failed to exhaust her administrative remedies with respect to Counts IV through VIII of the Amended Complaint, and she has not proven a "compelling" case for invoking equitable estoppel. <u>See</u>

ATC Petroleum, 860 F.2d at 1111.  Therefore, the Court must grant the agency's motion to dismiss these claims.[6]

## B.  The Independent Contractor Positions

The agency asserts that the Counts X through XII of the Amended Complaint, which concern the plaintiff's nonselection for VOA Persian contractor positions, should be dismissed for failure to state a claim under Title VII because "[t]he threshold requirement for imposing liability against the federal government under Title VII is that a complainant be an employee or an applicant for employment," Def.'s Mem. at 8, and "the positions listed in Counts X–XII for which [the plaintiff] was not selected were not federal positions, but rather independent contractor positions," id. at 9.  According to the agency, the "Amended Complaint includes not one factual allegation that would support a conclusion that the employment positions underlying her claims in Counts X–XII were anything other than independent contractor positions."  Def.'s Reply at 10; see also Def.'s Mem. at 8–10 (same).

The plaintiff argues in response that "whether the plaintiff has applied for federal employment is a factual inquiry that goes beyond the simple language used to describe the position," Pl.'s Opp'n at 12, and this factual question "should not be decided in the complete absence of discovery by either party," id. at 13.  According to the plaintiff, the facts alleged in her Amended Complaint "clearly entitle [her] to the inference that she sought federal employment."  Id.

---

[6] The Court concludes that the plaintiff's assertion that "genuine issues of material fact exist surrounding her equitable estoppel argument [ ] should also preclude summary judgment" on this issue, Pl.'s Opp'n at 10; see also id. at 10–11 (stating that "a number of disputed issues of material fact exist with regards to the [p]laintiff's claims, such that summary judgment is inappropriate at this stage"), is without merit because the plaintiff does not state which specific issues of fact are in dispute that are material to her equitable estoppel argument, see id., and she does not dispute any of the agency's facts regarding the federal employee positions at issue in Counts IV through VIII, see Pl.'s Facts at 2–4 (pagination supplied by ECF).

The Court agrees with the position of both parties, see Def.'s Mem. at 9; Pl.'s Opp'n at 13, that the Circuit established in Spirides that the appropriate test for "determin[ing] [ ] whether an individual is an employee or an independent contractor for purposes of [Title VII] . . . calls for application of general principles of the law of agency to undisputed or established facts," 613 F. 2d at 831. And, the Circuit concluded that the test's "most important factor" is "the extent of the employer's right to control the 'means and manner' of the worker's performance." Id. The Circuit, however, identified in Spirides eleven other factors to consider, id. at 832, which it later consolidated into four groups: (1) "the intent of the parties," (2) "whether contracting out work is justifiable as a prudent business decision," (3) "whether the business is exercising a degree of control that seems excessive in comparison to a reasonable client-contractor relationship in the same circumstances," and (4) "whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees," Redd v. Summers, 232 F.3d 933, 939–40 (D.C. Cir. 2000).

Upon review of the Amended Complaint, and drawing "all justifiable inferences" in the plaintiff's favor as the non-moving party, Anderson, 477 U.S. at 255, the Court agrees with the plaintiff that she sufficiently alleged in her Amended Complaint that she sought federal employment. The plaintiff's prior employment contract with the agency designated her "as a Producer/Writer/Researcher/Reporter." See Am. Compl. ¶ 38. In that capacity, the plaintiff worked as a TV show host, radio host, TV anchor, interviewer, writer, translator, researcher, editor, and radio producer at VOA Persian. See id. ¶¶ 15, 16, 20, 24, 30. The plaintiff alleges that, in those capacities, she was a de facto federal employee, see id. ¶¶ 9, 12, and supports that allegation by detailing the nature of her supervision, see id. ¶¶ 16–17, the agency's control over her work hours, schedule, and general conduct, see id. ¶¶ 18–19, 23, and the agency's provision

of training and work equipment, see id. ¶¶ 20–22.  The positions at issue in Counts X and XI, see

Am. Compl. at 15, were for a "Multimedia Reporter/Proofreader," see Def.'s Mot., Ex. C

(Position No. 039), and an "Anchor/Writer/Reporter," see id., Ex. E (Position No. 041).[7]  Based

on the description of these positions in the Amended Complaint, and in the absence of a more

robust factual record on the subject, the Court finds that these positions are sufficiently similar to

the plaintiff's prior position "as a Producer/Writer/Researcher/Reporter," Am. Compl. ¶ 38, that

it is reasonable to infer that the plaintiff, who already considered herself a de facto federal

employee in her prior contract position, assumed that these positions would entail the same

character of agency supervision and control.

     Given this inference, the Court concludes that summary judgment is inappropriate at this

time because the Circuit made clear that the application of the agency test must be based on

"undisputed or established facts," see Spirides, 613 F.2d at 831, and the parties clearly dispute

the nature of the positions challenged in Counts X through XII, see Pl.'s Facts at 4–6.  Moreover,

the Court agrees with another member of this Court that "heavy reliance on the language of the

[ ] contract . . . to show that the plaintiff was not an employee does little to advance th[e]

inquiry" required by Spirides, i.e., an "analysis of the economic realities of the work

relationship," Harris v. Att'y Gen. of the United States, 657 F. Supp. 2d 1, 10 (D.D.C. 2009)

(internal quotation marks omitted), and therefore, the plaintiff is correct that this question

"should not be decided in the complete absence of discovery by either party," Pl.'s Opp'n at 13;

see also Sharma v. Wash. Metro. Area Transit Auth., 57 F. Supp. 3d 36, 45–46 (D.D.C. 2014)

---

[7] In her Amended Complaint, the plaintiff asserts that she applied for the position BBG39-Q-15-PERSIAN-042, see Am. Compl. ¶ 58, which is the subject of Count XII, see id. at 16, but the agency did not attach the solicitation notice for this position, and instead attached the solicitation notice for the position BBG39-Q-15-PERSIAN-040, see Def.'s Mot., Ex. D (Position No. 040).  The Court concludes that this discrepancy is irrelevant at this stage, but urges the parties to clarify through discovery whether the plaintiff applied to the position BBG39-Q-15-PERSIAN-040 or the position BBG39-Q-15-PERSIAN-042.

(employing the Spirides test at the summary judgment stage); Almutairi v. Int'l Broad. Bureau, 928 F. Supp. 2d 219, 229–32 (D.D.C. 2013) (same); Khaksari v. Chairman, Broad. Bd. of Governors, 689 F. Supp. 2d 87, 91–92 (D.D.C. 2010) (same); Harris, 657 F. Supp. 2d at 10–13 (same); Sherwood v. Evans, 422 F. Supp. 2d 181, 184–87 (D.D.C. 2006) (same). But see Zhengxing v. Nathanson, 215 F. Supp. 2d 114, 117–20 (D.D.C. 2002) (employing the Spirides test at the motion to dismiss stage). Accordingly, the Court denies the agency's request to dismiss Counts X through XII based on the record that exists at this stage of the litigation in order to allow the parties to develop a factual record through discovery regarding the nature of these positions.

## IV.    CONCLUSION

For the foregoing reasons, the Court must dismiss Counts IV through VIII of the Amended Complaint because the plaintiff failed to exhaust her administrative remedies as to these claims, and equitable estoppel does not apply to them. The Court declines, however, to dismiss Counts X through XII at this time because the plaintiff has sufficiently alleged in her Amended Complaint that the employment positions underlying her claims in Counts X through XII were federal employment positions.

**SO ORDERED** this 21st day of September, 2017.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.