UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHMONIR RAHIMI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH WEINSTEIN, Chairman,<br>Broadcasting Board of Governors,<br><br>　　　　Defendant. | Civil Action No. 16-1173 (RBW) |

### **MEMORANDUM OPINION**

The plaintiff, Mahmonir Rahimi, brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17 (2012), against the defendant, Kenneth Weinstein, in his official capacity as the Chairman of the Broadcasting Board of Governors (the "Agency"), alleging that the defendant retaliated against her for actions she took in an investigation of allegations made by another employee. See generally Plaintiff's First Amended Complaint ("Am. Compl." or the "Amended Complaint"). Currently pending before the Court are the Defendant's Motion for Summary Judgment ("Def.'s Mot.") and the Supplement to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Motion for Sanctions ("Pl.'s Mot." or the "motion for sanctions"). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."); (2) the Statement of Material Facts About Which There Is No Genuine Dispute ("Def.'s Facts"); (3) the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff['s] Statement of Undisputed Material Facts ("Pl.'s Facts"); (5) the Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Reply"); and (6) the Defendant's Opposition to Plaintiff's Motion for Sanctions ("Def.'s Opp'n").

must grant the defendant's motion for summary judgment and deny the plaintiff's motion for sanctions.

I.     BACKGROUND

Beginning in March 2008, the plaintiff served as a "radio writer, researcher[,] and [television] producer and editor" for the Persian News Network at the Voice of America. Pl.'s Facts ¶ 2. The defendant hired her for this position as a "a purchase order contractor," id. ¶ 1; see also Def.'s Mot., Exhibit ("Ex.") B (Mahmonir Rahimi Deposition ("Rahimi Dep.")) 18:14–15, and the plaintiff "was to work as directed by [Voice of America's] 'Contracting Officers Representative[,]'" Pl.'s Facts ¶ 3; see also id. ¶ 4 ("[The plaintiff] was to work shifts 'as directed by the [Contracting Officers Representative],' which may include 'federal holidays and weekends.'"); Def.'s Mot., Ex. B (Rahimi Dep.) 26:3–7. "As a contractor, [the plaintiff] did not accrue paid time off, did not receive retirement benefits, did not receive Social Security benefits, and was not salaried," Pl.'s Facts ¶ 5; see also Def.'s Mot., Ex. B (Rahimi Dep.) 23:13–18, 23:6–12, 24:4–6, and according to the defendant, the plaintiff "expressly agreed that there was no 'employer/employee relationship,'" Def.'s Facts ¶ 6.

On May 26, 2015, the plaintiff's "contract was terminated" as a result of reduced funding, Pl.'s Facts ¶¶ 52, 55, and when she applied for a federal employment position as an International Broadcaster, she was not selected, id. ¶ 57. Instead, according to the defendant, Setareh Sieg, the Director of the Persian News Service, chose Behnood Mokri for the position because Mokri "had been performing the duties of this position and had recently been granted [United States] citizenship." Def.'s Facts ¶¶ 58–60; Def.'s Mot., Ex. G (Declaration of Setareh Sieg ("Sieg Decl.")) ¶¶ 1, 10–14. According to the plaintiff, she was not selected for this position in retaliation for "provid[ing] a sworn statement [in 2010] as part of [the defendant's

2

Equal Opportunity Employment ('EEO')] investigation into allegations [made by] another employee[.]"  Pl.'s Facts ¶ 13.

The plaintiff initiated this civil action on June 17, 2016, see Complaint at 1, and filed her Amended Complaint on November 2, 2016, see Am. Compl. at 1.  In her Amended Complaint, the plaintiff claims, inter alia, that the defendant (1) "deliberately mislabeled and misclassified [the plaintiff] as a non-personal service provider" ("Count I"), id. ¶ 72; (2) "retaliated against [the] [p]laintiff . . . by switching her to the night shift and by permanently prohibiting her from working during the morning shift" ("Count II"), id. ¶ 76; (3) "retaliated against [the] [p]laintiff . . . [by] denying her [television] hosting positions in 2012 and 2014" ("Count III"), id. ¶ 82;[2] (4) "retaliated against [the] [p]laintiff . . . by failing to hire her for [the International Broadcaster position]" ("Count IX"), id. ¶ 118; (5) "retaliated against [the] [p]laintiff . . . by failing to hire her for BBG39-Q-15-PERSIAN-041" ("Count X"), id. ¶ 124; (6) "retaliated against [the] [p]laintiff . . . by failing to hire her for BBG39-Q-15-PERSIAN-039" ("Count XI"), id. ¶ 130; and (7) "retaliated against [the] [p]laintiff . . . by failing to hire her for BBG39-Q-15-PERSIAN-042" ("Count XII"), id. ¶ 136.[3]

On November 10, 2016, the defendant moved to dismiss or, in the alternative, for entry of summary judgment in his favor as to Counts X to XII of the Amended Complaint, arguing that "the[se] positions . . . for which [the plaintiff] was not selected were not federal positions, but rather independent contractor positions."  Rahimi v. Weinstein, 271 F. Supp. 3d 98, 106 (D.D.C.

---

[2] The plaintiff misnumbers the paragraphs in the Amended Complaint at Count III, compare Am. Compl. ¶ 80, with Am. Compl. at 11 (numbering the first paragraph under Count III as paragraph 1), causing all subsequent paragraphs to be mislabeled.  For ease of reference, the Court has re-numbered the remaining paragraphs by continuing the consecutive numbering.

[3] On September 21, 2017, the Court dismissed Counts IV to VIII of the Amended Complaint because "the plaintiff failed to exhaust her administrative remedies" as to these claims.  Rahimi v. Weinstein, 271 F. Supp. 3d 98, 106 (D.D.C. 2017) (Walton, J.).

3

2017) (Walton, J.). Nonetheless, the Court denied the defendant's motion because the plaintiff "sufficiently alleged in her Amended Complaint that she sought federal employment," id. at 207, and concluded that "summary judgment [was] inappropriate . . . because the Circuit made clear that the application of the agency test must be based on 'undisputed or established facts,' and the parties clearly dispute the nature of the positions challenged in Counts X [to] XII," id. at 207–08.

After discovery was completed, the defendant has again moved for summary judgment, see generally Def.'s Mot., and in support of his motion, he submitted, inter alia, declarations from Sieg and Michelle Stewart, an employee at the Agency's human resources office. See generally id., Ex. G (Sieg Decl.); id., Ex. H (Declaration of Michelle A. Stewart). Thereafter, the plaintiff filed a motion for sanctions, claiming that these declarations should be precluded because they were "not previously disclosed or produced to [the] plaintiff[]" during discovery and also seeking monetary sanctions against the defendant. See Pl.'s Mot. at 1. These two motions are the subjects of this Memorandum Opinion.

## II. STANDARD OF REVIEW

The Court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.   ANALYSIS

**A.   Counts II, III, and X to XII**

The defendant argues that "[n]ow that discovery has concluded," summary judgment should be entered in his favor as to Counts II, III, and X to XII of the Amended Complaint because the plaintiff "was not a federal employee and . . . [the] positions for which she applied (but was not selected) were independent contractor positions," Def.'s Mem. at 22, and "as an independent contractor, Title VII is unavailable to [the plaintiff]," id. at 21.[4] The plaintiff argues

---

[4] As to Count I of the Amended Complaint, in which the plaintiff alleges a claim of "misclassification" brought pursuant to "48 C.F.R. § 2.101; 48 C.F.R. § 37.104; Pub. L. 107-228, Div. A, Title V, § 504, Sept. 30, 2002, 116 Stat. 1393," see Am. Compl. at 10, the defendant argues that he is entitled to summary judgment on this count because the plaintiff "does not identify any cause of action supporting this claim" and because "Title VII does not provide for such a claim," Def.'s Mem. at 23 n.4, an argument which the plaintiff does not address in her opposition, see generally Pl.'s Opp'n. The Court concludes that, because, as the defendant correctly notes, Title VII does not
(continued . . .)

in response that "[a]lthough [her] contract demarcates her as a contractor[,] she has been a de facto employee of [the defendant] for approximately [eight] years." Pl.'s Opp'n at 28.

In order to maintain a cause of action under Title VII against the federal government, the plaintiff must show that she was "in a direct employment relationship with a government employer." Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C. Cir. 1979). Therefore, "[i]ndividuals who are independent contractors or those not directly employed by such an employer are unprotected." Id. "[D]etermination of whether an individual is an employee or an independent contractor for purposes of [Title VII] involves . . . analysis of the 'economic realities' of the work relationship," which "calls for application of general principles of the law of agency to undisputed or established facts." Id. at 831. The District of Columbia Circuit, in Spirides, articulated a twelve-factor test that the Court must consider in making this determination. Id. The Court must "[c]onsider[] [ ] all of the circumstances surrounding the work relationship," and although "no one factor is determinative," "the extent of the employer's right to control the 'means and manner' of the worker's performance" is "the most important factor." Id. "If a [putative] employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." Id. The remaining eleven factors that the Court must consider are

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;

---

(. . . continued)
provide for such a claim, see generally 42 U.S.C. § 2000e to 2000e-17, and because the authority cited by the plaintiff in the Amended Complaint does not create a private right of action, cf. Kinnett v. Key W + Sotera Def. Sols., Civ. Action No. 18-110, 2019 WL 4023192, at *10 (W.D. Va. July 19, 2019), report and recommendation adopted, Civ. Action No. 18-110, 2019 WL 4018347 (W.D. Va. Aug. 26, 2019) ("[48 C.F.R. § 37.104] is part of the federal regulations governing executive agency contracts with private entities. There is no indication that it was intended to create any sort of private right of action by individuals against their private employers."), the Court will grant the defendant's motion for summary judgment as to Count I of the Amended Complaint.

6

>(2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Id. at 832. "[T]he question of [the] plaintiff's 'employee' status . . . [is] considered a merits issue, rather than a jurisdictional matter." Harris v. Att'y Gen., 657 F. Supp. 2d 1, 8 (D.D.C. 2009).

Here, the Court agrees with the defendant that "Title VII is beyond [the plaintiff's] reach" of Counts II, III, and X to XII of the plaintiff's Amended Complaint "due to her status as an independent contractor and because she applied for other independent contractor positions." Def.'s Mem. at 22–23. The defendant has presented evidence showing that six of the Spiredes factors support his argument that the plaintiff was not an employee. Specifically, the defendant points to undisputed evidence in the record that the plaintiff (1) "worked at the direction of [Voice of America's] contracting office," Def.'s Mem. at 23; see also id. at 2 ("During the pendency of the contract, [the plaintiff] was to work as directed by [Voice of America's] 'Contracting Officers Representative' [ ] for '[Voice of America] Radio, Television and/or internet entities[.]'" (third alteration in original)); Def.'s Mot., Ex. B (Rahimi Dep.) 26:3–7; Def.'s Facts ¶¶ 3–4; (2) "did not accrue paid time off, did not receive retirement benefits, did not receive Social Security benefits, and was not salaried," Def.'s Mem. at 2; see also id. at 23; Def.'s Mot., Ex. B (Rahimi Dep.) 23:6–18 (the plaintiff testifying that her "vacation times [were] unpaid" and that she did not receive any retirement or Social Security benefits); id., Ex. B (Rahimi Dep.) 24:3–9 (the plaintiff testifying that she was paid hourly instead of being paid

7

salary); Def.'s Facts ¶ 5; (3) "signed a statement, representing that she did not have an employer/employee relationship with [the defendant," Def.'s Mem. at 23; see also id. at 2 ("[The plaintiff] expressly agreed that there was no 'employer/employee relationship.'"); Def.'s Mot., Ex. B (Rahimi Dep.) 25:5–8 (the plaintiff testifying that she was "agreeing that there was no employer/employee relationship); and (4) "has admitted that when she was hired, she understood that she was 'hired as a contractor,' and that 'a contractor is different than a federal employee,'" Def.'s Mem. at 23; see also Def.'s Mot., Ex. B (Rahimi Dep.) 22:6–11.  In response, the plaintiff does not dispute that she "work[ed] at the direction of [Voice of America's] 'Contracting Officers Representative,'" Pl.'s Facts ¶¶ 3–4, and that she "did not accrue paid time off, did not receive retirement benefits, did not receive Social Security benefits, and was not salaried," id. ¶ 5.  Moreover, although the plaintiff addresses each factor of the twelve-factor test in Spiredes in depth, see Pl.'s Opp'n at 29–36, she does not identify any evidence in the record to support any of her assertions.  Instead, she references a document that appears to have been created by the plaintiff or her counsel in support of her EEO complaint.  See Pl.'s Opp'n, Ex. R (Ma Factor Responses – Complainant) at 1–3; see also Def.'s Reply, Ex. B (Complaint for Reprisal).  However, this document contains mere allegations, which, similar to "facts alleged in a complaint[,] are not evidence for the purposes of a motion for summary judgment."  Newton v. Architect of the Capitol, 840 F. Supp. 2d 384, 397 (D.D.C. 2012) (citing Fed. R. Civ. P. 56(c)(1), (3)); see also Gordon v. Beers, 972 F. Supp. 2d 28, 37 (D.D.C. 2013) ("[The plaintiff's] Amended Complaint contains allegations, not record evidence that can serve as the factual basis for [the] [p]laintiff's argument." (citing Fed. R. Civ. P. 56(c)(1)); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record.").  Without providing any

corroborating evidence that supports her assertions, the "[p]laintiff has offered nothing to create a material dispute of fact" regarding her claim that she was an "employee" for the purposes of Title VII. Gordon, 972 F. Supp. at 37; see also Bowyer v. District of Columbia, 910 F. Supp. 2d 173, 190 (D.D.C. 2012) ("[A] non-movant's allegations that are 'generalized, conclusory and uncorroborated by any evidence other than the [non-movant's] own deposition testimony' are 'insufficient to establish a triable issue of fact'—at least where the nature of the purported factual dispute reasonably suggests that corroborating evidence should be available." (quoting Akridge v. Gallaudet Univ., 729 F. Supp. 2d 172, 183 (D.D.C. 2010)), aff'd, 793 F.3d 49 (D.C. Cir. 2015). Therefore, the Court must grant the defendant's motion for summary judgment as to Counts II, III, and X to XII of the Amended Complaint.

**B.      Count IX**

In Count IX, the plaintiff alleges that the "defendant retaliated against [her] . . . by failing to hire her for [the International Broadcaster position], due to her participation in an EEO proceeding." Am. Compl. ¶ 38. The defendant argues that this claim fails because he "had legitimate, non-retaliatory reasons for not selecting [the plaintiff]" for the position. Def.'s Mem. at 19. Specifically, the defendant claims that he "selected [ ] Mokri rather than [the plaintiff]" for the position of International Broadcaster, which "was advertised as a citizen conversion,"[5] because Mokri "was performing [the] duties [of this position] in a more than satisfactory

---

[5] According to the defendant, a position is advertised as a citizen conversion "when a non-[United States] citizen [Voice of America] employee becomes a [United States] citizen, the position [he or she] occup[ies] is advertised so that if selected, this individual can attain the General Service [ ] status of a regular full-time employee, which would not have been available to an individual who was not a [United States] citizen." Def.'s Mot., Ex. G (Sieg Decl.) ¶ 12.

manner" and "had recently been granted [United States] citizenship[.]" Def.'s Mot., Ex. G (Sieg Decl.) ¶¶ 12, 14.[6]

Under Title VII, it is unlawful for an employer to retaliate against an employee who "has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show "(1) that [s]he engaged in [a] statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); see also Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012). In the absence of direct evidence of an alleged unlawful employment action, as is the situation here, claims of retaliation arising under Title VII are analyzed under the three-part framework articulated in McDonnell Douglas Corp. v. Green. See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the McDonnell Douglas framework to a Title VII retaliation claim). Under this framework, the plaintiff bears the initial burden of establishing her prima facie case of retaliation. See

---

[6] The plaintiff requests that the Court exclude the Sieg and Stewart declarations pursuant to Federal Rule of Civil Procedure 37(c) because they "were submitted after [the] close of [ ] [d]iscovery" and because the "[p]laintiff[] [is] clearly unduly prejudiced by such late production due to [her] inability to conduct any discovery as to the documents or related witnesses." Pl.'s Opp'n at 3–4; see also Pl.'s Mot. at 1, 4–5. Although Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless," Fed. R. Civ. P. 37(c)(1), the Court finds that defendant satisfied its discovery obligation because the defendant's Rule 26(a) initial disclosures not only identified both Sieg and Stewart as "individuals [who] are likely to have discoverable information that [the] [d]efendant may use to support his claims or defenses," but also set forth a description of the information that they could provide, Def.'s Opp'n, Ex. A (Defendant's Rule 26(a)(1) Disclosures) at 1–2. Thus, the Court cannot conclude that the defendant's initial disclosures of Sieg and Stewart violated Rule 26(a), or that the declarations establish that these initial disclosures were "in some material respect . . . incomplete or incorrect," such that the defendant was required to supplement its initial disclosures under Rule 26(e). Fed. R. Civ. P. 26(e)(1)(A). Rather, both the Sieg and Stewart declarations are consistent with the requirements of Rule 56(c)(4), which "expressly contemplate[s] declarations in support of summary judgment regardless of when in the discovery process the motion is filed." Ng v. Lahood, 952 F. Supp. 2d 85, 92 (D.D.C. 2013). Accordingly, the Court concludes that sanctions are unwarranted under Rule 37. Therefore, the Court denies the plaintiff's request to exclude these declarations as well as her request for sanctions.

McDonnell Douglas, 411 U.S. at 802; Vickers v. Powell, 493 F.3d 186, 194 (D.C. Cir. 2007).  If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, [non-retaliatory] reason for" his action.  McDonnell Douglas, 411 U.S. at 802; see Vickers, 493 F.3d at 194.  Once the employer offers a legitimate, non-retaliatory justification for his action, "the McDonnell Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is [retaliation] vel non."  Jackson, 496 F.3d at 707; see Vickers, 493 F.3d at 194.  In other words, when the "employer has asserted a legitimate, [non-retaliatory] reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas."  Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).  Rather, the district court must evaluate only whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee[.]"  Id.; see Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (applying the Brady framework in the context of a retaliation case); see also Walker v. Johnson, 798 F.3d 1085, 1093 (D.C. Cir. 2015) (stating that "the [C]ourt's sole focus becomes whether or not [the] [p]laintiff can provide sufficient evidence for a reasonable jury [to] not only disbelieve the employer's reasons, but [also] conclude that the real reason the employer took a challenged action was a prohibited one" (fourth and fifth alterations in original)).  To make this showing, the plaintiff must produce evidence "showing either 'that a [retaliatory] reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'"  Oviedo v. Wash. Metro. Area Transit Auth., 299 F. Supp. 3d 50, 60 (D.D.C. 2018) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

Here, the defendant has asserted a legitimate, non-retaliatory reason for the plaintiff's non-selection, see Def.'s Mem. at 20, claiming that Sieg "selected [an] individual[] who [was] better-suited for the position," id. at 19; see also Def.'s Mot., Ex. G (Sieg Decl.) ¶¶ 12–14 ("Mokri had been performing the duties of this position and had recently been granted [United States] citizenship.  In these types of situations, when a non-[United States] citizen [Voice of America] employee becomes a [United States] citizen, the position [he or she] occup[ies] is advertised so that if selected, this individual can attain the General Service [ ] status of a regular full-time employee, which would not have been available to an individual who was not a [United States] citizen. . . . [W]hile it is not automatic for the individual performing the duties of the position to be selected for the GS position, if that employee's work is satisfactory, that individual will be selected for the position. . . . Mokri was performing his duties in a more than satisfactory manner[.]").  Consequently, the Court must consider whether the plaintiff has produced sufficient evidence for a reasonable jury to infer that the reason provided by the defendant for the plaintiff's non-selection is pretextual and that the real reason for the non-selection was retaliation for the plaintiff's participation in EEO proceedings.  See Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288–89 (D.C. Cir. 1998); see also Brady, 520 F.3d at 494.

The plaintiff claims that her non-selection was pretextual because "she [was] very well qualified" for the International Broadcaster position, and that "[i]t remains highly suspect that [the plaintiff] was not selected for . . . [this] position[] given her exceptional track record and her superior qualifications."  Pl.'s Opp'n at 27.  In support of her position, she points to a declaration from Mohammad Manzarpour, the Executive Director of the Persian News Network, stating that the plaintiff "possesses the quality and experience to work in [Voice of America] service in different capacity either for [television or the web]."  Pl.'s Opp'n, Ex. E (Declaration of

Mohammad Manzarpour) ¶ 4.  However, contrary to the plaintiff's position, the defendant is not challenging whether the plaintiff <u>was</u> qualified for the position; rather, he is simply arguing that "she was not <u>as</u> well-qualified as the individual[] selected[.]" Def.'s Reply at 13 (emphasis added).  And, the plaintiff does not offer any evidence "to establish that [her] qualifications were sufficiently superior to those of [Mokri] to allow a jury to infer [retaliation.]" <u>Holcomb v. Powell</u>, 433 F.3d 889, 898 (D.C. Cir. 2006); <u>see also</u> <u>Adeyemi v. District of Columbia</u>, 525 F.3d 1222, 1227 (D.C. Cir. 2008) ("[A] plaintiff can directly challenge [a] qualifications-based explanation only if the plaintiff was 'significantly better qualified for the job' than those ultimately chosen." (quoting <u>Holcomb</u>, 433 F.3d at 897)).  In fact, in reviewing an employer's decision to hire based on a determination of superior qualifications, the Court does not serve as "a super-personnel department that reexamines an entity's business decisions," <u>Barbour v. Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999), and the Circuit has explained that the Court

> must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close would not usually infer discrimination on the basis of a comparison of qualifications alone.  In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualification of candidates, or that the employer made a judgment call.

<u>Aka</u>, 156 F.3d at 1294.  Therefore, the Court is precluded from second-guessing the defendant's selection decision where it appears that the defendant was faced with selecting from candidates possessing the skills necessary for the International Broadcaster position, <u>see</u> <u>Mount v. Johnson</u>, 174 F. Supp. 3d 553, 565 (D.D.C.) ("[W]here the evidence shows only 'slight questions of comparative qualifications,' it cannot be said to be sufficient to establish a genuine issue of fact regarding the starkly superior credentials that are necessary to survive a summary judgment challenge."), <u>aff'd,</u> 664 F. App'x 11 (D.C. Cir. 2016), and the plaintiff has proffered no other

evidence from which a reasonable jury could find pretext. Accordingly, the Court must grant the defendant's motion for summary judgment as to Count IX of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment as to Count I because the plaintiff's purported misclassification claim does not have a legal basis. The Court further concludes that the plaintiff was neither a federal employee nor did she apply for federal employee positions in order to fall within the protections of Title VII and therefore grants the defendant's motion for summary judgment as to Counts II, III, and X to XII of the Amended Complaint. The Court also concludes that the plaintiff fails to show that the defendant's stated reason was a pretext for retaliation and therefore grants the defendant's motion for summary judgment as to Count IX of the Amended Complaint. Additionally, the Court concludes that the declarations submitted by the defendant in support of his summary judgment motion may properly be considered by the Court and therefore denies the plaintiff's motion for sanctions.

**SO ORDERED** this 15th day of April, 2020.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.